UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

JULIE SU, ACTING SECRETARY OF LABOR,   )
UNITED STATES DEPARTMENT OF LABOR,   )
　　　　　　　　　　　　　　　　　　)
　　　　　　　Plaintiff,   )
　　　　　　　　　　　　　　　　　　)
　　　v.   )   Case No. 4:21CV1176 HEA
　　　　　　　　　　　　　　　　　　)
AT HOME CARE ST LOUIS, LLC, et al.,   )
　　　　　　　　　　　　　　　　　　)
　　　　　　　Defendants.   )

## **OPINION, MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiff's Motion for Partial Summary Judgment, [Doc. No. 40]. Defendant opposes the Motion. For the reasons set forth below, the Motion will be granted.

### **Introduction**

Plaintiff brought this action alleging Defendant has violated the Fair Labor Standards Act, ("FLSA"), 29 U.S.C. § 201, *et seq*. against At Home Care St. Louis, LLC, At Home Care St. Louis CDS, LLC, and Carlita Vasser. Plaintiff moves for summary judgment on the following issues: (1) At Home Care, CDS, and Carlita Vasser qualify as employers under the FLSA, (2) the FLSA applies to Defendants' employees, (3) thirty-four employees were not exempt from the FLSA overtime

provisions at relevant times during the Investigation Period, and (4) Defendants

violated the recordkeeping requirements of the FLSA.

## Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure, "[a] party may move

for summary judgment, identifying each claim or defense—or the part of each

claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a).

"The court shall grant summary judgment if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." *Id*.

The Eighth Circuit Court of Appeals has explained,

"Summary judgment is proper if the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as to any

material fact and that the movant is entitled to judgment as a matter of law."

*Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc)

(quotations omitted). A fact is "material" if it may "affect the outcome of the suit."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "An issue is genuine if

the evidence is sufficient to persuade a reasonable jury to return a verdict for the

nonmoving party." *Schilf v. Eli Lilly & Co.*, 687 F.3d 947, 948 (8th Cir. 2012)

(quotations omitted).

*Erickson v. Nationstar Mortg., LLC*, 31 F.4th 1044, 1047–48 (8th Cir. 2022). To put the "materiality" requirement slightly differently, " '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.' " *Rusness*, 31 F.4th at 614 (quoting *Doe v. Dardanelle Sch. Dist.*, 928 F.3d 722, 725 (8th Cir. 2019), in turn quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

On a motion for summary judgment, "a district court should 'not weigh the evidence, make credibility determinations, or attempt to discern the truth of any factual issue.' " *Avenoso v. Reliance Standard Life Ins. Co.*, 19 F.4th 1020, 1024 (8th Cir. 2021) (quoting *Great Plains Real Est. Dev., L.L.C. v. Union Cent. Life Ins.*, 536 F.3d 939, 943-44 (8th Cir. 2008)). Instead, the court must view the evidence in the light most favorable to the non-moving party and afford that party all reasonable inferences supported by the evidence. *Grinnell Mut. Reinsurance Co. v. Dingmann Bros. Constr. of Richmond, Inc.*, 34 F.4th 649 (8th Cir. 2022); *Pearson v. Logan Univ.*, 937 F.3d 1119, 1124 (8th Cir. 2019).

The parties bear specific burdens on a motion for summary judgment. "The moving party bears the burden of showing the absence of a genuine dispute." *Glover v. Bostrom*, 31 F.4th 601, 603 (8th Cir.) (citing Fed. R. Civ. P. 56(a)), *reh'g denied*, No. 20-2884, 2022 WL 1564097 (8th Cir. May 18, 2022). Thus, " '[t]he movant bears the initial responsibility of informing the district court of the basis

for its motion and must identify those portions of [the record] ... which it believes demonstrate the absence of a genuine issue of material fact.' " *Mensie v. City of Little Rock*, 917 F.3d 685, 688 (8th Cir. 2019) (quoting *Torgerson*, 643 F.3d at 1042).

The burden on the resisting party is as follows: The party opposing summary judgment must "cit[e] particular materials in the record" or show that the "materials cited do not establish the ... absence of a genuine dispute." Fed. R. Civ. P. 56(c)(1). "A mere 'scintilla of evidence' is insufficient to defeat summary judgment, and if a nonmoving party who has the burden of persuasion at trial does not present sufficient evidence as to any element of the cause of action, then summary judgment is appropriate." *Wagner v. Campbell*, 779 F.3d 761, 766 (8th Cir. 2015), quoting *Brunsting v. Lutsen Mountains Corp.*, 601 F.3d 813, 820 (8th Cir. 2010).

Similarly, if the movant has supported its motion for summary judgment, the party opposing summary judgment "may not simply rest on the hope of discrediting the movant's evidence at trial." *United States v. 3234 Washington Ave. N.*, 480 F.3d 841, 844 (8th Cir. 2007) ("*3234 Washington*"). Where the testimony of the movant's witnesses is critical, if the testimony is "positive, internally consistent, unequivocal, and in full accord with the documentary exhibits," "then the opposing party cannot force a trial merely to cross-examine the witness or in

the hope that something might turn up at the trial." *Id*. at 845 (quotations omitted); *Nationwide Prop. & Cas. Ins. Co. v. Faircloth*, 845 F.3d 378, 382 (8th Cir. 2016). But summary judgment is improper where specific facts "even partially" undermine the witness's credibility in a material way. *3234 Washington*, 480 F.3d at 845. *Erickson*, 31 F.4th at 1048. Thus, " '[t]o show a genuine dispute of material fact, a party must provide more than conjecture and speculation. Rather the nonmovant has an affirmative burden to designate specific facts creating a triable controversy.'" *Rusness*, 31 F.4th at 614 (quoting *McConnell v. Anixter, Inc.*, 944 F.3d 985, 988 (8th Cir. 2019)). The nonmoving party may not rest on mere allegations or denials but must show, through the presentation of admissible evidence, that specific facts exist creating a genuine issue for trial. *Anderson*, 477 U.S. at 256. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

## Undisputed Material Facts

The Court finds the following to be the undisputed material facts, based on Plaintiff's Statement of Undisputed Material Facts and Defendant's admissions thereof:

The U.S. Department of Labor Wage and Hour Division investigated Defendants' pay practices for compliance with the FLSA for the period of January

1, 2019 through December 31, 2020. Investigator Lisa Gurski conducted the investigation.

Defendant At Home Care St. Louis, LLC is a Missouri limited liability company with a principal business office located at 11430 St. Charles Rock Road, Bridgeton, Missouri (the Bridgeton office). At Home Care does business from three other offices located at 2 Melgrove Lane, Suite 100 in Hannibal, Missouri (the Hannibal office); 960 Plaza Drive in St. Clair, Missouri (the St. Clair office); and, 3737 West Chestnut Expressway, Suite 1W in Springfield, Missouri (the Springfield office).

Since at least January 1, 2019, At Home Care has been a home care agency providing in-home and other community-based services to its clients. At Home Care's clients included disabled pediatric patients, disabled adults, and senior citizens. The in-home services that At Home Care provided its clients included personal care services such as cooking, cleaning, bathing, dressing, grooming, and running errands for clients. The services provided by At Home Care may be funded by Medicaid or private insurance companies.

Defendant At Home Care St. Louis CDS, LLC ("CDS") is a Missouri limited liability company and it has shared the Bridgeton office with At Home Care.

CDS provided consumer-directed services to individuals in Missouri. CDS, like At Home Care, is a Medicaid program. Under the consumer-directed program, the client would hire the attendant (also referred to as a "caregiver") directly.

On behalf of its clients, CDS would perform administrative tasks like background checks, employment references, and other "on-boarding" tasks for attendants. CDS would also process time clock entries and do payroll for consumer-directed attendants on behalf of CDS clients.

The state of Missouri Department of Health and Senior Services ("MO-DHHS") explains the distinction between in-home and consumer-directed services on its website as follows:

> [The Division of Senior and Disability Services] administers two different programs, available in every county: in-home services and consumer-directed services.
>
> In-home services (IHS) are designed to assist in meeting the unmet needs of a person and provide necessary assistance for the person to remain in the least restrictive environment.
>
> In general, IHS consists of personal care, nursing services, housekeeping, respite, and adult day care services.
>
> Consumer-directed services (CDS), although similar in nature to in-home services, are provided to persons with a physical disability and do not include any task performed by a licensed professional. A participant of CDS must be able to direct the care planning process and hire an attendant. In general, CDS consists of personal care (bathing, cleaning, and meal preparation).

At Home Care and CDS publicized their in-home and consumer-directed services as a single homecare agency on the same website, at https://www.athomecaremissouri.com/.

At Home Care and CDS were for-profit businesses. Since January 1, 2019, At Home Care and CDS each have had annual gross sales of at least $500,000. At Home Care had gross sales of $667,445 in 2019. At Home Care's income was $797,422.80 in 2020 and $785,488.99 in 2021.

The payroll records at Exhibit J were produced by Vasser during the Wage and Hour Division's investigation.

At Home Care employed the 42 employees listed in Appendix A (the "Affected Employees") during the Investigation Period.

Beginning around July 1, 2020, employees of At Home Care were transferred to the CDS payroll. This included the following 15 employees: Sherlita Brinkley (Home Care Aide), Brandy Brown (Executive Assistant), Shontelese Brown (Home Care Aide), Ladonna Chaney (Scheduler), Raevynne Clark (HR Director), Elishea Graves (Manager), Elizabeth King (Manager), Toni LaJoy (Manager), Mikka McClure (Billing Supervisor), Chelsea Mitchell (HR Director), Barbara Shaffer (Manager), Chevelle Staten (Manager), Mia Tracy (Biller/Scheduler), Dawn White (Manager), and Pam White (Manager and Home Care Aide).

CDS was the entity that paid the 15 employees during the times the employees appeared on the CDS payroll. At Home Care employees continued to appear on CDS payroll until they were switched back to At Home Care's payroll in January 2023.

CDS performed some pre-employment tasks for At Home Care employees; for example, CDS performed a criminal background check for Stephanie Williams who was employed as an LPN by At Home Care during the Investigation Period. Employees who worked directly for At Home Care also performed services that benefited CDS; for instance, according to an email chain, Toni LaJoy identified herself as a "Manager" for "At Home Care and At Home Care CDS" and, in that capacity, was involved in hiring employees.

During the relevant Investigation Period, Defendant Carlita Vasser owned both At Home Care and CDS. Vasser was also the CEO and Director of Nursing for At Home Care. As CEO, Vasser provided general oversight of all At Home Care activities, oversaw the managing of supervisors and employees in all offices, and directed, controlled, and supervised employees. As a Director of Nursing, Vasser supervised the nurses and helped recruit home care aides. At Home Care had an employee handbook that Vasser was personally involved in putting together. Vasser actively managed and supervised At Home Care's and CDS's operations and their employees during the Investigation Period by

recruiting and hiring employees, firing employees, setting employees' work schedules, and setting employees' pay rates and salaries. At her deposition, Vasser represented that she was the sole employee of CDS.

Defendants had written procedures that applied equally to employees of At Home Care and CDS attendants, such as a "Payroll, Time, and Attendance" policy and procedure. There was a single written job description for the positions of "Home Care Aide" and "CDS Attendant."

A "Home Care Aide" employed by Defendant At Home Care and an "Attendant" who provided consumer-directed services under the program operated by Defendant CDS, have the same job responsibilities, such as "planning, preparation, and clean-up of meals," "laundering clothes and linens," "shopping for essential items (e.g., groceries, cleaning supplies, etc."

During the Investigation Period, At Home Care employed employees in the position of Home Care Aide, including 18 of the Affected Employees. Home Care Aides provided personal care services to At Home Care's clients in the clients' private homes. The personal care services that Home Care Aides provided included cooking, cleaning, bathing, dressing, grooming, and running errands for clients.

At Home Care also employed Licensed Practical Nurses ("LPNs"), including seven of the Affected Employees. The LPNs provided health care services in the clients' private homes.

Because the bulk of At Home Care's business was to provide personal care services, most of its employees worked in the positions of Home Care Aide and LPN.

The supplies and materials used by At Home Care employees to provide personal care services includes soap, water, cleaning supplies for the home, and personal protective equipment like masks and gloves. These supplies were provided to employees by the defendants or their clients.

At Home Care also employed office staff at its business offices as office managers, office assistants, and to perform payroll and medical billing tasks. On the mark-up to Appendix A, Vasser handwrote each employee's occupation and added asterisks to denote salaried employees. The employees without an asterisk next to their names were paid on an hourly basis.

During the Investigation Period, 18 employees employed as Home Care Aides and eight office staff employees were paid on an hourly basis. The employees employed as Home Care Aides: Erica Barnard, Sherlita Brinkley, Shontelese Brown, Latricia Darnell, Freddie Gingell, Denice Gonzalez, Gerald Green, Richard Grisby, Michael Harmon, Anwar Hasaan, Jody Lennon, Jessie Liggins, Whitney Meyers, Yolanda Sanderson, Gretchen Schultz, Sharon Tarwater, Pam White, Amber Young; and, office employees: Brandy Brown (Executive Assistant), Ladonna Chaney and Candyce Davis (Schedulers), Demi Chapman

(Assistant), Raevynne Clark (Human Resources Director), Elishea Graves (Manager), Artis Jones IV (Billing Clerk), Mikka McClure (Billing Supervisor), and Ki-Myra Thomas and Mia Tracey (Billers).

Hourly employees would use a telephone tracking system called "Telephony" to track the number of hours they worked. Two office employees – Barbara Shaffer and Dawn White, both Managers – were switched from hourly to salaried in 2020. Barbara Shaffer was paid at the rate of $11.00 per hour for pay periods between January 3, 2020 and July 31, 2020. Shaffer was paid a semi-monthly salary of $1,083.33 for pay periods between August 1, 2020 and August 31, 2020. Shaffer was paid a semi-monthly salary of $1,213.33 for pay periods between September 1, 2020 and December 24, 2020.

Dawn White was paid at the rate of $11.00 per hour for pay periods between January 3, 2020 and June 15, 2020. White was paid a salary of $1,250 on a semi-monthly basis (i.e., paid twice a month) for the pay periods between July 1, 2020 and December 24, 2020.

Elizabeth King was employed as a Manager during the Investigation Period. King was paid a biweekly salary of $1,200 for pay periods between January 3, 2020 and April 9, 2020. King was paid a biweekly salary of $1,320 for pay periods between April 24, 2020 and May 16, 2020. King was paid a semi-

monthly salary of $1,430 for pay periods between May 16, 2020 and December 24, 2020.

Toni LaJoy was employed as a Manager during the Investigation Period. LaJoy was paid a biweekly salary of $1,200 for pay periods between January 3, 2020 and May 16, 2020. LaJoy was paid a semi-monthly salary of $1,300 for pay periods between May 15, 2020 and December 24, 2020. Chelsea Mitchell was employed as a Human Resources (HR) Director during the Investigation Period. Mitchell was paid a semi-monthly salary of $1,473.33 for pay periods between November 1, 2020 and December 24, 2020.

Chevelle Staten was employed as a Manager during the Investigation Period. Vasser testified that Staten was not employed beyond the orientation period and Staten was not considered an FLSA-exempt employee. From September 1, 2020 to October 31, 2020, Staten was paid on a semi-monthly basis in amounts ranging between $544.38 and $1,451.67.

In discovery, Defendants claimed certain employees were exempt from the FLSA minimum wage or overtime requirements.

Vasser acknowledged in her deposition that Managers did not meet the minimum salary level in 2020, but she claimed to have made additional payments to four of the six Managers (King, Shaffer, LaJoy, and Dawn White) to

bridge the gap between the employees' salaries and the minimum salary threshold. Vasser did not make the additional payments until March 2021.

During the Department of Labor's investigation, in September 2020, the Wage and Hour Division requested from At Home Care payroll and matching time records for the two- year period of October 14, 2018 to October 13, 2020. Vasser provided some of the requested records, such as timesheets and payroll for the year 2020, but she did not produce any timesheets or timecards for the period January 2019 through November 2019 or payroll records for the timeframe January 2019 to June 2019.

In discovery, Defendant At Home Care acknowledged that it did not maintain records showing the hours worked by its employees from January 1, 2019 to June 30, 2019. Vasser testified that she did not have the records for "the first quarter and second quarter of 2019" because a payroll processing company took the records and refused to return them. Vasser has a lawsuit pending against the payroll company.

## Discussion

An employer is defined in the FLSA as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). "'Under the FLSA, the determination of whether a party is an employer is a question of law for the court." *Solis v. Hill Country Farms, Inc.,* 808 F.Supp.2d

1105, 1113 (S.D.Iowa 2011) *aff'd,* 469 Fed.Appx. 498 (8th Cir.2012)(citing D*ole v. Elliott Travel & Tours, Inc.,* 942 F.2d 962, 965 (6th Cir.1991)).” *White v. 14051 Manchester Inc*., 301 F.R.D. 368, 387–88 (E.D. Mo. 2014).

Under the FLSA, an employer “includes any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency.” 29 U.S.C. § 203(d); *Wirtz v. Pure Ice Co.,* 322 F.2d 259, 262 (8th Cir.1963)(“‘Employer’ includes any person acting directly or indirectly in the interest of an employer in relation to an employee.”). “The Supreme Court has indicated that courts should apply an ‘economic realities' test to determine whether an employment relationship exists.” *Baker v. Stone Cnty., Mo.,* 41 F.Supp.2d 965, 979 (W.D.Mo.1999). Applying the “economic realities test,” “[t]o determine whether an individual or entity is an employer, the court considers whether the alleged employer: ‘(1) possessed the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.' ” *Gray v. Powers,* 673 F.3d 352, 355 (5th Cir.2012)(citing *Williams v. Henagan,* 595 F.3d 610, 620 (5th Cir.2010)).

“The Eighth Circuit has held that a corporate officer with operational control of the corporation's day-to-day functions is an employer within the meaning of the FLSA.” *Simms v. Northport Health Servs. of Ark., LLC.*, Case No. 2:12-cv-02252,

2013 WL 2102974 (W.D. Ark. May 14, 2013) (citing *Wirtz*, 322 F.2d at 262–63)).

"The so-called 'active management test' provides that a corporate officer may be

included in the definition of 'employer' if he hires the supervisors and home office

workforce and if the wages of the corporation's employees are subject to his

control, if only in varying degrees." *Id.* (citing *Chambers Constr. Co. v. Mitchell*,

233 F.2d 717, 724 (8th Cir. 1956)). *Wirtz* and its progeny "require 'operational

control of significant aspects of ... day-to-day functions, including compensation of

employees or other matters in relation to an employee' " with the "the overarching

concern is whether the alleged employer possessed direct or indirect power to

control significant aspects of the plaintiff's employment." *White*, 301 F.R.D. at 388

(quoting *Hembree v. Mid-Continent Transp., Inc.*, Case No. 09-6094-cv-SJ-HFS,

2011 WL 5841313, at *1 (W.D. Mo. Nov. 21, 2011)); *Childress*, 95 F. Supp. 3d at

1139; *see also Solis v. Hill Country Farms, Inc.*, 808 F. Supp. 2d 1105, 1115 (S.D.

Iowa 2011), *aff'd*, 469 F. App'x 498 (8th Cir. 2012) (citing *Donovan v. Agnew*, 712

F.2d 1509, 1511 (1st Cir. 1983), for the proposition that "the overwhelming weight

of authority is that a corporate officer with operational control of a corporation's

covered enterprise is an employer along with the corporation, jointly and severally

liable under the FLSA for unpaid wages."). In short, a corporate officer must not

only have the power to exercise operational control, he or she must exercise that

power to be an employer within the meaning of the FLSA. *Solis*, 808 F. Supp. 2d

at 1115. The Eighth Circuit noted in *Wirtz* that finding an individual to be an employer within the meaning of the FLSA would be "well supported" by showing "a combination of stock ownership, management, direction and the right to hire and fire employees." *Wirtz*, 322 F.2d at 263. *See also, Yasevich v. Heritage Co., Inc.*, No. 3:20-CV-00019 KGB, 2023 WL 5670774, at *14 (E.D. Ark. Sept. 1, 2023).

**Employers**

The undisputed material facts establish that Defendants At Home Care, At Home Care St. Louis CDS, LLC, and Vasser were employers during the period at issue in this case.  At Home Care directly employed the 42 employees. At Home Care St. Louis CDS directly benefited from the work done by these employees; CDS operated a consumer-directed program wherein the client hired the attendants, and on behalf of the clients, CDS would do background checks and employment references for attendants yet to be hired.  The paperwork was overseen by CDSCDS paid and maintained the payroll records of fifteen At Home Care employees for at least six months during the investigation period. CDS exercised control over employees' employment conditions.

Vasser was directly involved in the day-to-day operations of At Home and At Home Care St. Louis CDS.  She recruited, hired, supervised, and set pay rates. She was involved in employee handbook preparation. She controlled the

companies as the owner, CEO, and Director of Nursing. Defendant Vasser clearly

qualifies as an "employer" under the FLSA.

**Application of the FLSA to Defendants' Employees**

Under the FLSA, Defendants' Home Care Aides and LPNs were covered by

the Act.  Domestic service employees are covered under the Act because

employment of persons in domestic service in households affects commerce." See

29 U.S.C. § 202(a); 29 C.F.R. § 552.99 ("Congress in section 2(a) of the Act

specifically found that the employment of persons in domestic service in

households affects commerce."). The Home Care Aides performed cooking,

cleaning, bathing, dressing, grooming, and running errands for the clients in their

private homes. The LPNs were responsible for providing health care in the clients'

homes. These duties clearly fall within "domestic service employment" as set out

in the FLSA *See* 29 C.F.R. § 552.3. These employees fall within a single enterprise

engaged in commerce under 29 U.S.C. § 203(r). As Plaintiff thoroughly details,

the activities of At Home Care and CDS were similar in nature in that each

company provided or facilitated personal care services for their clients in Missouri,

through the Medicaid program. The personal care services were the same whether

they were provided by a Home Care Aid employed by At Home Care, or an

Attendant through CDS. At Home Care and CDS performed "related activities."

*See Brennan v. Plaza Shoe Store, Inc.*, 522 F.2d 843, 848 (8th Cir. 1975)(a shoe

store and dress shop engaged in related activities because, at each location, the stores sold articles of wearing apparel to the general public entering the premises which housed both stores).

Defendant companies' activities were performed through a unified operation over which Defendant Vasser exercised control. "Common control" exists where ownership is vested in a single person. 29 C.F.R. § 779.223. "Unified operation" entails "combining, uniting, or organizing" the performance of related activities "so that they are in effect a single business unit or an organized business system which is an economic unit directed to the accomplishment of a common business purpose." 29 C.F.R. § 779.217. Defendant Vasser owned At Home Care and CDS. She also controlled both businesses as the CEO and Director of Nursing of At Home Care, and as an employee of CDS.  The shared website at https://www.athomecaremissouri.com/ demonstrates Defendants held the companies out to the public as part of a single home care agency with the "At Home Care" designation. The companies also shared written job descriptions and policies, including time and attendance policies. The companies conducted their activities in such a manner as to be a unified business system. *See Donovan v. Weber*, 723 F.2d 1388, 1393-94 (8th Cir. 1984).

The evidence also establishes At Home Care and CDS were for-profit businesses in the home-care industry. By operating At Home Care and CDS,

Vasser could participate in both components of the home care industry, the in-home and consumer-directed components. Defendants had a common business purpose. *Brennan*, 522 F.2d at 848.

The evidence proves the enterprise met the $500,000 threshold during the Investigation Period, as required under 29 U.S.C. § 203(s)(1)(A)(ii). The defendant companies admitted their annual gross volume of sales have exceeded $500,000 since Jan. 1, 2019.

Under the FLSA, employers must pay employees a minimum wage and overtime pay for employees who work more than 40 hours per week.  29 U.S.C. §§ 206(a), 207(a)(1). Section 13(a)(1) of the FLSA exempts from the minimum wage and overtime pay requirements ''any employee employed in a bona fide executive, administrative, or professional capacity.'' 29 U.S.C. § 213(a)(1). The undisputed material facts establish that twenty-eight hourly employees were nonexempt under 29 C.F.R. § 541.602(a). "An employee will be considered to be paid on a "salary basis" within the meaning of [Part 541] if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed." 29 C.F.R. § 541.602(a). Defendants in this case have acknowledged that 28 employees employed as Home Care Aides and office employees were paid on an hourly basis

during the entire Investigation Period. The hourly employees would use a telephone tracking system (i.e., Telephony) to track the hours that they worked for payroll purposes. The employees' compensation fluctuated each pay period depending on the number of hours they worked, and for this reason, the 28 hourly employees were not paid on a "salary basis" within the meaning of 29 C.F.R. § 541.602(a) during the entire Investigation Period. These employees were not exempt from the FLSA minimum wage and overtime compensation protections. 29 U.S.C. §§ 206(a), 207(a)(1), 213(a)(1); 29 C.F.R. § 541.602.

The required salary level for exempt employees has been $684 per week. 29 C.F.R. § 541.600 (2020). The required weekly salary amount is equivalent to a biweekly salary of $1,368, a semimonthly salary of $1,482, or monthly salary of $2,964. *Id*. Defendants' payroll records show six salaried employees were paid less than $684 a week during the second half of the Investigation Period, from January 1, 2020 through December 31, 2020. In this timeframe, the weekly salaries of these six employees ranged from about $600 to $660. Vasser acknowledged in her deposition that Managers did not meet the minimum salary level in 2020 but claimed to have made additional payments in 2021 to four of the six Managers (King, Shaffer, LaJoy, and Dawn White) to make up for the shortfall in the employees' salaries. However, assuming these additional payments were intended to bring employee salaries up to the threshold level, the payments would be

immaterial because they would have been untimely under the Department of

Regulations. The deadline to make the catch-up payment is one pay period after

the end of the year. *Id*. Vasser testified that she did not make the additional

payments until March 2021, which was after the first pay period for these

employees who were paid on a semi-monthly basis. As a result, the six Managers

were not exempt in 2020. 29 C.F.R. § 541.600. There is no genuine dispute of

material fact that 34 of the 42 Affected Employees were not paid on a salary basis

at the required salary levels at times during the Investigation Period. Because

Defendants could not meet their burden of proving that these employees were

nonexempt during the relevant times, the Secretary is entitled to judgment as a

matter of law on this issue.

Finally, there is no genuine dispute that Defendants failed to comply with

the recordkeeping requirements of the FLSA. Under the Labor regulations, the

required records include payroll records for each employee that show the

employee's hours worked each day and each workweek, total wages paid per pay

period, and date of payment and period covered by payment. 29 C.F.R. § 516.2(a).

All payroll records must be preserved for at least three years. 29 C.F.R. § 516.5(a).

Employers must maintain "supplementary records" on which the payroll records

are based, such as timecards or timesheets. 29 C.F.R. § 516.6(a)(1). These must be

maintained for at least two years. *Id*. The required records must be kept safe and

accessible, and an employer must make the records available for inspection by the Wage and Hour Division upon request. 29 C.F.R. § 516.7. Defendants did not maintain records of employees' hours and wages for the period January 2019 through November 2019. Defendant Vasser produced some time and payroll records requested by the Wage and Hour Division, but no timesheets or timecards were produced.

## Conclusion

Based upon the foregoing analysis, the motion for partial summary judgment against Defendants is well taken as to the Secretary's claims that: (1) At Home Care, CDS, and Carlita Vasser qualified as employers under the FLSA, (2) the FLSA applied to Defendants' employees, (3) thirty-four employees were not exempt from the FLSA overtime provisions at relevant times during the Investigation Period, and (4) Defendants violated the recordkeeping requirements of the FLSA.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Partial Summary Judgment, [Doc. No. 40] is granted.

An appropriate judgment shall be entered upon the conclusion of the

remaining issues herein.

Dated this 21st day of November,  2023.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE